**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **15-00623-hb**

### INTERIM ORDER ON MOTION TO DISMISS

The relief set forth on the following pages, for a total of 14 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**06/12/2015**



_(signature)_
US Bankruptcy Judge
District of South Carolina

Entered: 06/12/2015

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Grady Cole Odom,<br><br>Debtor(s). | C/A No. 15-00623-HB<br><br>Chapter 11<br><br>**INTERIM ORDER ON**<br>**MOTION TO DISMISS** |

**THIS MATTER** came before the Court for a hearing on June 5, 2015, on the Motion to Dismiss ("Motion") filed by creditor Emily Brown.[1] Debtor Grady Cole Odom objected.[2] The parties presented numerous exhibits to the Court for consideration along with the testimony of Brown, Odom, Brown's family court counsel and Odom's son-in-law. At the hearing on the Motion and at the close of Brown's evidence, Odom's counsel made a motion for judgment on partial findings pursuant to Fed. R. Civ. P. Rule 52(c), made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. Rules 7052 and this contested matter pursuant to Fed. R. Bankr. P. 9014. Ruling on Odom's motion was deferred until the close of the evidence. The Court finds that Brown presented ample evidence to support her request for relief prior to Odom's motion and, therefore, the motion for judgment on partial findings in favor of Odom is denied.

After consideration of all evidence, the Court makes findings as follows pursuant to Fed. R. Civ. P. Rule 52(a)(1), made applicable to this contested matter pursuant to Fed. R. Bankr. P. Rule 7052 and 9014.

---
[1] ECF No. 29, filed May 5, 2015.
[2] ECF No. 39, filed May 26, 2015.

1

**FACTS AND PROCEDURAL HISTORY**

The majority of the relevant facts are undisputed. Brown is Odom's estranged wife. Odom and Brown are currently involved in litigation pending before the Family Court of Barnwell County, South Carolina, for separate maintenance and support, a division of assets, and dissolution of their marriage. On July 9, 2013, the Family Court entered a Consent Order providing for certain *pendente lite* relief.[3] The evidence indicates, and the Consent Order reflects, that both parties were represented by counsel. The Consent Order was drafted by Odom's attorney.

In the Consent Order, Odom agreed to certain temporary relief, including the following paragraphs, numbered as they appear in that document:

> 7. Wife shall remain in the home in Blackville, South Carolina and have temporary use of the contents therein.
>
> 8. Husband shall pay the monthly utilities, water, garbage collection, insurance and taxes that come due for the Blackville house, and for any repairs that the Husband determines to be necessary.
>
> 9. Wife is entitled to temporary possession of the car she has. Husband is to pay the Wife's Toyota car payment; insurance premiums; and taxes on that car that come due during this time period.
> . . .
> 11. Husband is to make at least minimum payments on Wife's Bank of America credit card up to $564.00 per month, whichever is less. If Wife adds anything to the card she is solely responsible for any additional amount owed, but the Husband must notify her of anything that needs to be paid upon receipt of the bill.
> . . .
> 13. Husband will continue to pay monthly premium payments on Wife's major medical insurance policy.
> . . .
> 16. Husband shall pay Wife spousal support monthly in the amount of $1,700 per month. . . .

---

[3] Brown's Ex. 1.

2

The terms of the Consent Order were extended by court order entered on December 30, 2013 (hereinafter collectively referenced as the "Family Court Order").[4] The Family Court Order provided: "In an effort to maintain the status quo; protect marital assets; and avoid a period of time where no Order exists controlling the relationships, obligations and entitlements of the parties; the prior Temporary Consent Order [of July 9, 2013] is extended and shall remain effective until further Order of the Court." The terms of that Order have not been altered by the Family Court since that time. At the time the orders were entered, Brown was not gainfully employed and had some cash for living expenses available through a trust fund. She testified, however, that the fund had been depleted prior to the June 5, 2015 hearing on the Motion.

The Family Court Order further found that if Odom failed to make the monthly separate maintenance and spousal support payments to Brown within five days of their due date, Odom would be required to make future payments through the Clerk of Court for Barnwell County plus five percent (5%) court costs. This provision was enforced thereafter and Odom is now required to make the monthly support payments, pursuant to paragraph 16, to the Clerk of Court, triggering the 5% service charge, for a total of $1,785.00 each month.

A final, contested hearing in the divorce proceeding was held on February 2, 2015, before the Honorable Vicki J. Snelgrove. Odom did not attend the hearing, but his counsel attended on his behalf and participated to completion.

After the hearing was concluded but before a final order could be entered, Odom filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 4, 2015, in

---

[4] Brown's Ex. 2.

3

this Court.[5] Judge Snelgrove entered an Order on February 23, 2015, finding that the Family Court is "precluded from issuing its ruling on the merits until an Order is obtained and filed with the Barnwell County Clerk of Court, lifting the automatic stay in the Bankruptcy action."[6]

As a result of a Motion for Relief from Stay filed by Brown,[7] an agreed order modifying the automatic stay ("Stay Relief Order") was entered on June 5, 2015, providing that:

> . . . Brown may litigate the following matters, and the family court may consider the same and enter appropriate orders: (a) divorce itself, *viz.*, dissolution of the marriage; (b) the establishment or modification of domestic support obligations, including alimony or other payment obligations in the nature of support; and (c) the taxing of attorney's fees and costs against either party. . . . Stay relief is granted to permit the parties to litigate the determination of marital property (including the date at which the marital estate is to be fixed) and the equitable division of property and debts. The family court may determine and enter appropriate orders regarding this issue.[8]

A final order from the Family Court is anticipated in the near future.

Brown also filed this Motion to Dismiss pursuant to 11 U.S.C. § 1112(b)[9] and Fed. R. Bankr. P. 1014(a), alleging Odom has failed to make post-petition domestic support obligation payments and the case was filed in bad faith. It is not disputed that at the time the Motion was filed, Odom had not made significant, timely post-petition payments to Brown pursuant to the Family Court Order.[10]

---

[5] ECF No. 1.
[6] Brown Ex. 23.
[7] ECF No. 18, filed Apr. 10, 2015.
[8] ECF No. 45, filed June 5, 2015.
[9] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.
[10] Odom is also delinquent on his pre-petition obligations imposed by the Family Court Order. His Schedule E lists a pre-petition debt in favor of Brown in the amount of $27,000. Brown has filed a claim in excess of that amount.

In support of her Motion to Dismiss, Brown argues that since the filing of Odom's Chapter 11 case, Odom has not paid $1,700.00 per month labeled as "alimony" in paragraph 16.[11] This fact is not disputed; however, since the filing of the Motion, Odom paid $3,150.00 and $2,205.00 for alimony to the Clerk of the Family Court.[12] A post-petition delinquency through the date of the June 5th hearing in the amount of $1,785.00, which includes the 5% service fee, is past due. Another installment was due on June 10, 2015, and each month thereafter as long as the Family Court Order remains in effect.

Brown also calls the Court's attention to the terms of the Family Court Order that require Odom to pay monthly utilities, water, garbage collection, home insurance, and taxes for the maintenance of a house in Blackville, South Carolina, pursuant to paragraph 8. There is no dispute that Odom has not paid any such amounts post-petition. Paragraph 9 of the Family Court Order also requires Odom to pay Brown's car payments, car insurance premiums, and taxes on a Toyota Camry in Brown's possession. Odom did not adequately show the Court that he has satisfied this portion of the Family Court Order.[13] The Family Court Order also requires Odom to make payments toward the balance owed on Brown's Bank of America credit card, pursuant to paragraph 11, and the premiums on Brown's major medical insurance policy, pursuant to paragraph 13. There is no dispute that Odom has not paid any such amounts post-petition.

---

[11] Although Odom testified generally that the intent of the Family Court Order was not to provide support for Brown, he did not disagree that this amount is a domestic support obligation pursuant to § 101(14A) and that it must be paid post-petition pursuant to § 1112(b).

[12] Brown's Ex. 25.

[13] A debtor in bankruptcy has an affirmative obligation to demonstrate he or she is current on all post-petition domestic support obligations. *See* 11 U.S.C. § 1129(a)(14). Odom submitted into evidence a Geico Insurance policy insuring the Toyota Camry. Odom's Ex. D. However, Brown's name is not listed on the policy and she is not identified as an insured driver. Therefore, the Court had insufficient information to determine Odom has complied with this provision of the Family Court Order. On the other hand, Brown presented evidence of payment for a car insurance policy on her behalf from another source. Brown's Ex. 11.

5

Brown asserts that all of these obligations in the Family Court Order are domestic support obligations as defined in § 101(14A) for purposes of § 1112(b). Odom disagrees and testified that at the time he entered into the Consent Order, he did not intend to provide additional spousal support to Brown and did not believe that the payment obligations would continue as long as they have. However, Odom's own Schedules and Statements in the bankruptcy disclose a monthly expense of $1,785.00 for alimony, maintenance, and support, and an additional $1,670.00 for "court ordered additional support" including "lights," garbage, "wife's credit card," health insurance and "house" insurance.[14] Brown and her counsel testified that all of these obligations were intended for Brown's support and that the parties discussed Brown's financial situation and need for support at the time the Family Court Orders were entered.

Odom also argues that he should not be required to, and Brown should not be able to recover, any payments for her living expenses and utilities related to the Blackville house because Brown no longer lives there. When the Family Court Order was entered Brown resided in or intended to reside in the Blackville house. Brown testified that Odom stopped making support payments within the past year and, as a result, she has since made other living arrangements. Odom further testified that his financial situation has deteriorated. He, however, has not obtained any modification of the Family Court Order based on any change in the parties' financial circumstances or Brown's living arrangements.

After weighing the evidence and having an opportunity to consider the credibility of the witnesses, the Court finds as a fact that Odom currently owes post-petition

---

[14] ECF No. 11, filed Mar. 2, 2015.

6

delinquencies pursuant to the Family Court Order in the total amount of $8,295.82 as of June 5, 2015. This total amount is determined based on the following:

1. $1,785.00 (includes support plus service fee) for the post-petition delinquency pursuant to paragraph 16. This amount is calculated by deducting the May 11, 2015 payment of $3,150.00, and the June 3, 2015 payment of $2,205.00 from the total amount that has come due post-petition prior to the June 5th hearing.

2. Payments imposed pursuant to Paragraph 8 of the Family Court Order in the amount of $991.60, calculated as follows:

    a) the monthly utilities for the Blackville home in the amount of $230.40 per month for four months; and,

    b) garbage collection in the amount of $17.50 per month for four months. [15]

3. Payments imposed pursuant to Paragraph 9 in the amount of $2,543.54, calculated as follows:

    a) car payments on Brown's Toyota Camry in the amount of $434.12 per month for four months;

    b) car insurance on Brown's Toyota Camry in the amount of $129.36 per month for four months; and,

    c) post-petition annual county taxes on Brown's Toyota Camry in the one-time amount of $289.63.

---

[15] Brown argues that the provision in the Family Court Order requiring Odom to pay insurance and taxes on the Blackville home should be deemed a domestic support obligation. The insurance on the Blackville home is not currently underwritten and has not been paid by Brown; therefore, Brown is not seeking reimbursement of that expense, though she claims Odom is in default on that obligation. Furthermore, the taxes on the Blackville home have not come due during the pendency of Odom's bankruptcy matter and, therefore, Brown is not currently claiming arrears as to that obligation for the purposes of this Motion.

4. Payments toward the balance owed on Brown's Bank of America Visa credit card in the amount of $564.00 per month or $2,256.00 for four months pursuant to Paragraph 11.

5. Payments on Brown's health insurance premiums in the amount of $179.92 per month or $719.68 for four months pursuant to paragraph 13.

Calculation of the amounts above was made by considering the evidence of amounts actually paid by Brown or on her behalf as well as by estimating the amounts that would have been due had she remained in the Blackville house. Brown presented this calculation at the hearing and Odom disputed it. However, the Court finds that the calculation is supported by the greater weight of the evidence.

At the hearing, Brown's attorney acknowledged that he must pay all post-petition domestic support obligations as the Court determines and that he intends to do so, and asked the Court for an opportunity to cure within a reasonable time.

### DISCUSSION AND CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A), and this Court may enter a final order.

Section 1112(b)(1) of the Bankruptcy Code provides,

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

8

"Cause" includes the "failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition." 11 U.S.C. § 1112(b)(4)(P). Pursuant to §101(14A),

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is-
> **(A)** owed to or recoverable by--
>> **(i)** a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>> **(ii)** a governmental unit;
>
> **(B)** in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> **(C)** established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>> **(i)** a separation agreement, divorce decree, or property settlement agreement;
>> **(ii)** an order of a court of record; or
>> **(iii)** a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> **(D)** not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

The obligations in question are clearly owed to a spouse or former spouse and were established before the date of the bankruptcy filing by reason of applicable provisions of a separation agreement or order of the Family Court. Odom only disputes the nature of the claims. To determine if the obligations are in the nature of support, the Court must look to federal law. *In re Rhodes*, C/A No. 08-03606-HB (Bankr. D.S.C. Oct. 31, 2008) (citing *In re Davis*, No. 06-10581-DHW, 2007 WL 865683, at *2 (Bankr. M.D. Ala. Mar. 15, 2007)). Labels assigned to provisions of the Family Court Order are not controlling for purposes of the Bankruptcy Code. *In re Werthen*, 329 F.3d 269, 273 (1st Cir. 2003) ("The federal

9

courts have been unwilling to treat the label applied by the divorce court as controlling for Bankruptcy Code purposes. Nominally, the critical issue is whether the divorce court judge 'intended' a particular award to be for support or for something else." (internal citations omitted)). When deciding whether a debt should be characterized as one for support or property settlement, courts must consider whether the obligation was intended by the parties and/or the court to be one for support. *In re Baker*, 274 B.R. 176, 188 (Bankr. D.S.C. 2000); *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir. 1986).

> Certain factors have been utilized as guidance to determine the nature of the obligation: (1) the substance and language of the document in question; (2) the financial condition of the parties at the time of the decree or agreement; (3) the function served by the obligation and intent of the parties at the time of the agreement; and (4) whether there is evidence to question the intent of a spouse or evidence of overbearing by either party.

*In re Poole*, C/A No. 07-03093-HB, at 8 (Bankr. D.S.C. Oct. 9, 2007) (citing *In re Fitzgerald*, No. 02-15275-W, slip op. at 5 (Bankr. D.S.C. Mar. 12, 2003)); *Catron v. Catron (In re Catron)*, 164 B.R. 912, 919 (E.D. Va. 1994), *aff'd*, 43 F.3d 1465 (4th Cir. 1994); *Boyle v. Donovan*, 724 F.2d 681, 683 (8th Cir. 1984) (citing *Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1057 (8th Cir. 1983)).

Odom agreed to pay the monthly payment due as a result of Paragraph 16 of the Family Court Order within a reasonable time. Based on the testimony before the Court and after a review of the Family Court Order, it does not appear that there is any dispute that this payment fits squarely within the definition of a domestic support obligation. Therefore, it must be paid to avoid dismissal pursuant to § 1112(b) and to enjoy the benefits of bankruptcy protection in a reorganization case.[16]

---

[16] Odom has filed a Motion to Convert this case from Chapter 11 to Chapter 13. ECF No. 37, filed May 21, 2015. Chapter 13 of the Bankruptcy Code includes similar requirements for confirmation of a Chapter 13 reorganization plan. *See* 11 U.S.C. § 1325(a)(8).

Although Odom testified that he never intended to provide additional support for Brown—referencing the obligations of Paragraphs 8, 9, 11, and 13 of the Family Court Order—his Schedule J submitted to this Court under penalty of perjury identifies the disputed payments as "court ordered additional support[.]" After a review of the Family Court Order, and considering the testimony and credibility of Brown and her family court lawyers, the Court finds Brown's position is more credible and these payments for Brown's living expenses were intended to be in the nature of alimony, maintenance and/or support. Odom's argument that Brown's living expenses associated with the Blackville house are not due because she no longer lives at that property is unpersuasive.

Upon careful consideration of the testimony provided at the hearing, together with the language set forth in the Family Court Order and the intent of the parties, the Court finds the obligations due from Odom to Brown pursuant to Paragraphs 8, 9, 11, 13, and 16 of the Family Court Order are domestic support obligations for purposes of the Bankruptcy Code. Therefore, Odom's failure to meet these post-petition obligations is cause for dismissal pursuant to § 1112(b)(1) and (b)(4), which provides that the Court *shall* dismiss or convert a case if cause exists.

Failure to pay these obligations in a timely manner is also evidence of bad faith on the part of Odom in the filing of this case. However, the Court notes that he requested a reasonable time to cure any delinquencies and indicated a willingness to do so. For the benefit of both parties, the Court will allow Odom a brief cure period before issuing a final ruling on the Motion. Should Odom fail to cure the post-petition domestic support obligation delinquencies, or should he fail to remain current on his post-petition domestic

11

support obligations hereafter, the case *shall* be dismissed by separate order of the Court as the applicable statute allows.

**IT IS THEREFORE, ORDERED:**

1. That Odom shall cure the post-petition delinquency due to Brown for domestic support obligations by making payments as follows:

    a) $1,785.00 (payment plus service fee) for the delinquency of the post-petition spousal support payment payable directly to the Clerk of Court for Barnwell County Family Court, South Carolina, to be received by that court on or before **June 19, 2015**; and,

    b) a lump sum payment of $6,510.82 payable directly to Brown for the four month (February through May) post-petition arrearage for additional support obligations and living expenses on or before **July 15, 2015**.

2. That Odom shall remain current on post-petition domestic support obligations that come due or may be due after the hearing on this matter by making payments as follows:

    a) the monthly spousal support payment of $1,785.00 (payment plus service fee) for the month of June 2015 to the Clerk of Court for Barnwell County Family Court, South Carolina, on or before **June 19, 2015;**

    b) timely monthly spousal support payments of $1,785.00 to the Clerk of Court for Barnwell County Family Court, South Carolina, beginning in July 2015, and continuing thereafter for so long as those payments are due per the Family Court Order; and,

    c) monthly payments of $1,555.30 for additional spousal support obligations and living expenses pursuant to Paragraphs 8, 9, 11, and 13 of the Family Court Order, beginning June 2015, payable on the last day of each month directly to Brown, and continuing until further of this Court.[17]

3. That a continued hearing on this matter will be held before the Court on **July 31, 2015**, at **10:00 a.m.** at the **J. Bratton Davis United States Bankruptcy Courthouse, 1100 Laurel Street, Columbia, South Carolina 29201-2423**, to review Odom's compliance with this Order and to consider whether any further relief is due pursuant to Brown's Motion to Dismiss and § 1112(b).

4. That this Order is intended to provide Odom an opportunity to continue to reorganize his finances in bankruptcy as he requests and to cure and meet his obligations under the Bankruptcy Code. Nothing in this Order is intended to limit the ability of the Family Court to alter or amend, at Odom's request, any of the obligations described herein that come due after entry of this Order. Nothing in this Order is intended in any way to limit the terms of the Stay Relief Order entered on June 5, 2015, or to excuse any untimely payments as ordered by the Family Court.

5. **Notice and service of this Order is hereby delegated to the Movant, Brown pursuant to SC LBR 5075-1.**

**IT IS SO ORDERED.**

---

[17] The additional support obligations are broken down monthly as follows: the monthly utilities for the Blackville home in the amount of $230.40 per month; garbage collection in the amount of $17.50 per month; car payments on Brown's Toyota Camry in the amount of $434.12 per month; car insurance on Brown's Toyota Camry in the amount of $129.36 per month; payments on Brown's Bank of America Visa credit card in the amount of $564.00; payments on Brown's health insurance premiums in the amount of $179.92 per month.